IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DERRICK MARTIN, # R-49274,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-956-JPG |
| | ) |
| **MR. HUDSON,** | ) |
| **MR. HASS,** | ) |
| **ANGELA GROTT,** | ) |
| **LT. BESS,** | ) |
| **and WARDEN of MENARD,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is now before the Court for a merits review of Plaintiff's pro se civil rights complaint pursuant to 28 U.S.C. § 1915A.

## Background

Plaintiff had previously filed suit against some of the above Defendants in *Martin v. Hudson, et al.*, Case No. 13-cv-416-JPG-PMF (filed April 30, 2013) (the Court shall refer to this earlier case as "*Martin I*"). After the § 1915A merits review, Plaintiff was allowed to proceed on Count 1 of that action, which asserted that Defendants Hass, Hudson, and Grott violated his First Amendment rights when they confiscated his personally-created artwork and refused to return it (Doc. 7 in *Martin I*). Counts 2 and 3 in *Martin I* were dismissed. Count 2 (taking of personal property without due process) was dismissed without prejudice; the dismissal of Count 3 (failure to respond to grievances) was with prejudice.

As *Martin I* proceeded, Plaintiff belatedly received a response to a prison grievance he

had filed in connection with Count 1. He then voluntarily dismissed *Martin I* so he could exhaust his administrative remedies. When Plaintiff sought to reopen the case, the Court directed that his proffered Amended Complaint (Doc. 1 herein) should instead be filed as a new action (Doc. 2). The instant case was then opened, and was randomly assigned to the undersigned Judge. Due to the particular circumstances of the case and Plaintiff's attempts to exhaust his grievances within the prison system, it was further ordered that no filing fee would be assessed for this new action (Doc. 2, p. 6).

**The Complaint (Doc. 1)[1]**

All events took place at Menard Correctional Center ("Menard"), where Plaintiff continues to be confined. The allegations in the complaint regarding the confiscation and destruction of Plaintiff's artwork and supplies largely track those in the original complaint filed in *Martin I*. However, Plaintiff includes some additional detail, and incorporates entirely new claims for retaliation and endangering his safety.

On February 13, 2013, Defendant Hass and other unknown officers shook down Plaintiff's cell, after placing Plaintiff and his cellmate in the nearby shower room. Plaintiff had approximately 20 completed pieces of art stored in a clear plastic bag for safekeeping until he could mail them to family or friends outside the prison. The storage bag was marked in bold letters: "PLEASE DO NOT DAMAGE" (Doc. 1, p. 2). Each item inside was tagged and labeled with the name and address of the intended recipient. This artwork was of great sentimental value to Plaintiff, who had spent considerable time creating the pieces to "rehabilitate his way of thinking." *Id*. He states that the paintings "saved his life!" *Id*. They also represented his

---

[1] This pleading is labeled "Amended Complaint" because Plaintiff submitted it for filing in *Martin I*. It does not contain a separate listing of the party Defendants, so the Court has named five Defendants on the docket sheet according to the allegations in the complaint. Upon further review, additional Defendants will be included.

political beliefs and views, and his "sexual orientations depiction between a husband and wife." *Id*. He later states that one piece (which was confiscated) depicted him and his wife in the nude (Doc. 1, p. 4). In addition, Plaintiff had a number of other artworks around the cell in various stages of completion, including paintings that were leaning against the wall to dry.

Upon viewing these pieces of art, Defendant Hass and/or the unknown officers called in the "White Shirt Officers" to review Plaintiff's artwork (Doc. 1, pp. 3-4). These unknown "white shirt" officers confiscated five items from Plaintiff's art storage bag, consisting of four oil paintings and one acrylic style poster. While Plaintiff was held in the shower room, he observed one male officer and two female officers carrying these pieces of art away from his cell. He called out to them, asking what they were doing, but they ignored him (Doc. 1, p. 3). Upon returning to the cell he discovered that Defendant Hass and/or the unknown officers had damaged or destroyed several of the remaining works (for example, placing legal papers on top of wet canvases where they became stuck to the paint), broke Plaintiff's art supplies, and poured out tubes of acrylic paint as they ransacked the cell.

Plaintiff was never issued a disciplinary ticket for having the confiscated paintings, nor was he given a "shakedown slip" (property receipt) after they were taken. When Plaintiff asked why his art was taken and destroyed, Defendant Hass told him he should be glad he did not get a ticket, and that the Internal Affairs Officers (Mr. Hudson, Mrs. Woozy, and Mrs. New) wanted to look at his artwork to make sure it was not in violation of prison rules (Doc. 1, p. 4). Plaintiff filed grievances and inquiries attempting to get his artworks back and to find out why they were not returned. Defendant Grott (counselor) responded to one grievance with the statement, "Art Work Not Allowed" (Doc. 1, p. 5). When Plaintiff sent further grievances or attempted to appeal to another administrative level, his inquiries were routed to Defendant Grott, and at one point she

told him she had intercepted his mail containing an inquiry to another official (Doc. 1, p. 6). Defendant Grott's responses became increasingly harsh, until she told Plaintiff in late March 2013, "I [Plaintiff] can not paint the way I want, about what I paint." *Id*.

Soon after this exchange, on March 21, 2013, Plaintiff was moved to the North One housing unit "as punishment for challenging [Defendant Grott] directly." *Id*. He asserts that he was purposely placed in a cell with an aggressive and mentally unstable cellmate who was a high-ranking gang member. This individual let Plaintiff know that he did not like to have guards coming around the cell, which intimidated Plaintiff into ceasing his efforts to get his art back. Further, Plaintiff filed an emergency grievance requesting a cell change (Doc. 1, p. 7; Doc. 1-2, pp. 9-11).

On April 4, 2013, Defendant Lt. Bess came to the cell and disclosed, in front of the aggressive cellmate, that Plaintiff had written an emergency grievance seeking to be moved for his safety. In fear that this exchange would lead to an attack by the cellmate, Plaintiff pretended he did not know what Defendant Bess was talking about. Plaintiff remained in that cell until he was moved on April 9, 2013. He then wrote to Warden Harrington to thank him for the move, and to inquire again about his confiscated artwork. He also filed another grievance over the artwork.

Just days after this grievance, Plaintiff was moved back to 6th Gallery, in the same area as the aggressive former cellmate (Doc. 1, p. 8). Because of Defendant Bess' public disclosure of Plaintiff's grievance over his fear of attack from that inmate, Plaintiff has heard other prisoners talking about that incident. He thus feels that his safety is still at risk in that housing area, because he comes into contact with the former cellmate during meals and other occasions when prisoners are out of their cells. Plaintiff further believes that Defendant Bess purposely

placed him in danger in retaliation for Plaintiff's grievances filed over the art confiscation. *Id*.

Plaintiff asserts that Defendant Hass and the unknown officers who searched his cell took their actions because of the nature and contents of his work, and because of the political views and "sexual orientational taste" depicted in his art (Doc. 1, p. 4). He indicates that the Internal Affairs Officers (Mr. Hudson, Mrs. Woozy, and Mrs. New)[2] confiscated and refused to return the five pieces for the same reasons, in violation of his First Amendment right to free expression. (Doc. 1, pp. 4, 9). He denies that the pieces reflected any "security threat groups" as claimed in one of the responses to his complaints (Doc. 1, p. 9; Doc. 1-1, p. 11). Additionally, he asserts that the damage and destruction of his artwork constituted cruel and unusual punishment in violation of the Eighth Amendment. Again, he complains that he was frustrated in his attempts to seek redress through the prison grievance process, and blames the Warden for failing to step in to see that he got a response (Doc. 1, p. 9).

As relief, Plaintiff requests an injunction compelling Defendants to return his confiscated artwork, stop harassing him and relocating him within the prison, allow him to be present for any further cell search, and replace his confiscated art supplies (Doc. 1, pp. 10-11). He also seeks money damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

---

[2] The Clerk shall be directed to add Mrs. Woozy, Mrs. New, and the unknown officers as Defendants herein.

**Count 1:** First Amendment claim against Defendants Hass, the Unknown Party Officers, Hudson, Woozy, New, and Grott, for confiscating and/or refusing to return Plaintiff's artwork; and against Defendants Hass and the Unknown Party Officers for damaging and destroying other works of art;

**Count 2:** Retaliation claim against Defendant Grott, for having Plaintiff moved into a cell with a dangerous cellmate because he challenged her handling of his complaints over the confiscation of his artwork;

**Count 3:** Eighth Amendment claim against Defendant Bess for placing Plaintiff in danger of assault, by disclosing that Plaintiff had complained to prison authorities about his cellmate;

**Count 4:** Retaliation claim against Defendant Bess, for disclosing Plaintiff's complaint about his cellmate in retaliation for Plaintiff's protected activity of pursing grievances over the confiscation of his artwork.

Notably, as discussed in the threshold order in *Martin I*, Plaintiff may not pursue any claim against Defendant Grott for her mishandling of his grievances or for intercepting grievances Plaintiff intended to send to other officials. The claim for mishandling grievances (Count 3 in *Martin I*) was dismissed with prejudice and cannot be revived in this action. This includes Plaintiff's claim against then-Warden Harrington for failing to intervene to ensure that Plaintiff received responses to his grievances.

Similarly, Plaintiff's claim for compensation or replacement of his destroyed art supply property was dismissed under Count 2 in *Martin I*. That dismissal was without prejudice to a possible claim for damages in the Illinois Court of Claims.

Plaintiff's new claim that the destruction of his artwork amounted to cruel and unusual punishment and thus violated the Eighth Amendment **(Count 5)** shall be dismissed. Although offensive, this conduct does not constitute the type of "punishment" that is constitutionally forbidden. Only serious deprivations of basic human needs like food, medical care, sanitation, and physical safety will trigger Eighth Amendment scrutiny. *See Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Moreover, an Eighth Amendment claim based on the identical conduct which underlies the First Amendment claim in Count 1 would be duplicative, and would add nothing to any potential recovery. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 Fed. App'x 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims). For these reasons, the Eighth Amendment claim labeled as **Count 5** shall be dismissed with prejudice.

In addition, because Plaintiff is seeking injunctive relief, the current Warden of Menard shall remain in the action as a Defendant, in her official capacity only. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out). Furthermore, Plaintiff may direct discovery requests to the Warden in order to identify the Unknown Defendant Officers who searched his cell and confiscated his artwork.

**Disposition**

The Clerk is **DIRECTED** to add the following party Defendants to this action: **MRS. WOOZY** (Internal Affairs), **MRS. NEW** (Internal Affairs), and **UNKNOWN PARTY OFFICERS**.

**COUNT 5** is **DISMISSED** with prejudice as duplicative and for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **HUDSON, HASS, GROTT, BESS, WARDEN of MENARD, WOOZY,** and **NEW**: (1) Form 5 (Notice of a Lawsuit and Request

to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John/Jane Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding the fact that he is not being assessed a filing fee for this action. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to bring his claims in *Martin I* without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1). This requirement carries over to the instant case.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 24, 2014**

*s/J. Phil Gilbert*
United States District Judge
